IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LEWIS FLOYD, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:09-cv-916-TMP |
| ) | |
| DUANE CORDER, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This cause is before the court on the motion for judgment on the pleadings (Doc. #17) filed June 11, 2010, by the defendant, Duane Corder.[1] Defendant seeks dismissal of plaintiff's claim that the defendant used excessive force against him in violation of the Fourth Amendment and 42 U.S.C. § 1983. Specifically, defendant asserts that, on the basis of the pleadings alone, he is entitled to qualified immunity. This matter has been fully briefed, and the court has considered the pleadings and the arguments set forth by both parties. The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c). (Doc. #22).

**STANDARD OF REVIEW**

Plaintiff Lewis Floyd, Jr., brought this action pursuant to 42 U.S.C. § 1983 "and Alabama law," seeking compensatory and punitive damages and attorneys fees. He filed an amended

---

[1] Defendant also filed a motion for summary judgment on December 1, 2010, but that motion is not yet ready for consideration.

complaint on May 20, 2009, alleging one count expressly captioned as pursuant to 42 U.S.C. § 1983.[2] Plaintiff contends that the defendant used excessive force, in violation of his Fourth Amendment constitutional rights, while subduing him during a confrontation at a school.[3] The defendant seeks dismissal on grounds that he is entitled to qualified immunity.

The procedural vehicle invoked by the defendant for dismissal is a motion for judgment on the pleadings. Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." The Eleventh Circuit has noted:

> Judgment on the pleadings under Rule 12(c) is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts. *Hawthorne v. Mac Adjustment, Inc*., 140 F.3d 1367, 1370 (11th Cir.1998). If upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved

---

[2] As discussed in the undersigned's earlier report and recommendation, it is not clear what defendants the plaintiff seeks to sue, whether it is only Deputy Corder, or is it Deputy Corder *and* Jefferson County, Alabama. Although far from clear, the court finds that only Deputy Corder has been properly named and joined as a defendant in this action. Notwithstanding a reference to Jefferson County as a "party" in the text of the complaint, the caption of neither the original complaint nor the amended complaint lists the county as a defendant, as required by Rule 10(a) of the *Federal Rules of Civil Procedure*. ("The title of the complaint must name *all* the parties..."). It is perhaps more important that there is no indication that plaintiff has ever attempted to serve Jefferson County with process, and the county has never appeared in this action. Well more than 120 days has elapsed since the filing of the action (and its removal), and the county is due to be dismissed even if plaintiff had intended to sue it. Also, the court previously found that Deputy Corder could not be sued in his official capacity because he is entitled to the sheriff's Eleventh Amendment immunity. This also means that, insofar as Deputy Corder is sued for a law enforcement decision, no county policy or custom could be implicated because, for law enforcement purposes, the deputy is the employee of and controlled by the sheriff, not the county.

[3] The court previously dismissed all claims against Deputy Corder in his official capacity and all claims against him under Alabama law. (Doc. #11).

2

consistent with the allegations, the court should dismiss the complaint. *White v. Lemacks*, 183 F.3d 1253, 1255 (11th Cir.1999).

Horsley v. Rivera, 292 F. 3d 695, 700 (11th Cir. 2002).  The court applies the same standard to a Rule 12(c) motion as applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim. Ross v. Alabama, 893 F. Supp. 1545, 1548 (M.D. Ala. 1995).  This requires the court to examine and assume as true only the factual allegations set forth in the plaintiff's complaint to determine whether the undisputed factual allegations raise a plausible cause of action.

The amended complaint in this case is somewhat unusual in that plaintiff has attached to it, and incorporated into the amended complaint (see Doc. #4, ¶ 9), the trial testimony of the defendant, Deputy Corder, and another witness, Bridgette Willis, taken during a criminal trial in which the defendant was charged with disturbing the peace.  Rule 12(d) mandates:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

The court notes, however, that the transcript of testimony attached to the complaint and incorporated into it is not "matter outside the pleadings"; they are part of the pleadings.  If the transcripts had been offered in support of the motion and not as part of the complaint itself, the court would be required to convert the Rule 12(c) motion into a motion for summary judgment and give the parties an opportunity to provide evidentiary material in response to it.  However, documents attached to the complaint, which are central to the allegations in the complaint, and whose authenticity is not

challenged may be considered without converting the motion to a motion for summary judgment. Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir.2005); Fetterhoff v. Liberty Life Assur. Co., 282 Fed. Appx. 740, 743 note 1 (11th Cir. 2008). The court is aware, of course, that in Horsley v. Feldt, 304 F.3d 1125 (11th Cir. 2002), the court of appeals held that transcripts of a news conference attached to an *answer* could be considered only if the motion for judgment on the pleadings were converted to a summary judgment motion. But the court reached this conclusion only because the plaintiff disputed the authenticity of the transcripts. By contrast, a news article not disputed by the plaintiff could be considered without conversion. See id. at 1135. The court explained:

> Our Rule 12(b)(6) decisions have adopted the "incorporation by reference" doctrine, see In re Silicon Graphics Inc. Securities Litigation, 183 F.3d 970 (9th Cir. 1999), under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. See Harris v. Ivax Corp., 182 F.3d 799, 802 n. 2 (11th Cir. 1999). "Undisputed" in this context means that the authenticity of the document is not challenged. See, e.g., Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 16-17 (1st Cir. 1998); GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997); Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). Given that the operative rule language is identical and that the provisions serve the same purpose, we believe that the Rule 12(b)(6) incorporation by reference doctrine should apply in Rule 12(c) cases as well.
>
> We recognize, of course, that the "written instrument" provision of Rule 10(c) ("[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes") is applicable to pleadings and not to motions, but we do not believe it dictates a different result insofar as the incorporation by reference doctrine is concerned. That doctrine with its two requirements must apply for Rule 12(c) purposes to documents attached to answers just as it applies for Rule 12(b)(6) purposes to documents attached to motions to dismiss. Otherwise, the conversion clause of Rule 12(c) would be too easily circumvented and disputed documents attached to an answer would have to be taken as true at the pleadings stage. The written instrument provision of Rule 10(c) does not require that.

4

> Applying the incorporation by reference doctrine to the pleadings in this case leads us to conclude that the AP article attached to the amended answer should be considered as part of the pleadings for Rule 12(c) purposes, because that article is central to one of the claims and its authenticity is undisputed.

Id. at 1134-1135.

In this case, the court believes that the trial transcripts annexed to the amended complaint, not disputed by either party, may be considered without converting the instant Rule 12(c) motion into a motion for summary judgment. It is plain that the plaintiff does not dispute the authenticity of the transcript; if anything, he vouches for it by attaching to his complaint. The substantive factual allegations of the complaint make reference to the transcript. Accordingly, the court will consider the trial transcripts in assessing the merits of the Rule 12(c) motion.

The standard governing motions to dismiss has recently been changed. For many years, the standard relied upon was the "no-set-of-facts" test announced in Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). In Conley, the Supreme Court stated that a complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." 355 U.S. at 45-46. The Conley standard was retired when the Supreme Court decided Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The Supreme Court in Twombly clearly raised the threshold for factual allegations in a complaint from "conceivable" to "plausible". 550 U.S. at 564. Twombly clearly instructs that "Conley's 'no set of facts' language has been questioned, criticized, and explained away long enough" and "this famous observation has earned its retirement." 550 U.S. at 562-63. The Supreme Court reiterated its adherence to a heightened standard for the

pleading of facts in Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009). Accordingly, the court must evaluate the Rule 12(c) motion in light of the Twombly standard.

## BACKGROUND

Floyd's claims arise from an incident that occurred October 23, 2007, at Bottenfield Middle School in Adamsville, Alabama. Lewis Floyd is the uncle of a boy who was a student at the school. Corder is a deputy sheriff working for the Jefferson County Sheriff's Department, who was assigned at that time as a D.A.R.E. officer and security officer at the school. In his amended complaint, Floyd alleges that Corder used a taser on him three times while he was at the school. Floyd alleges that he was unarmed, was not engaged in a crime, was not acting unreasonably, and was not threatening Corder. However, because these are legal conclusions that must be disregarded by the court, the court will look to the basic facts described in the transcript attached to the complaint.

A copy of a transcript from a criminal proceeding in state court indicates that the following events transpired: Floyd arrived at school about the time that the school day ended to pick up his nephew. He found out from a school employee, Bridgette Willis, that the nephew was in a tutoring session, when he was supposed to be in detention. Willis went to get the nephew from the classroom, but Floyd followed her. Floyd's nephew left the classroom with him, and the school employee walked in front of them back toward the school office. At one point, she believed that she heard a noise that sounded like Floyd hitting the child. Being alarmed, Willis summoned Deputy Corder from the school office, because she wanted his assistance "when a parent gets upset." Willis

told Corder that she though Floyd had hit the student. Corder confronted Floyd in a breezeway between the school buildings, but Floyd did not respond. He continued moving toward his nephew. Corder put his hand up to stop Floyd from moving toward the nephew, but Floyd pushed or hit Corder's hand away. Corder then pulled out his taser and told Floyd to get on the ground. Floyd did not comply, but continued to walk away and toward an entrance to the school. Corder again told Floyd to stop, but he kept going. Corder then fired the taser at him three times, causing Floyd to fall to the ground. At the time, Corder had no handcuffs with him (having used them to arrest two trespassing teenagers earlier), so he summoned help from another deputy. Eventually, Floyd was handcuffed and transported to Cooper Green Hospital for medical evaluation.

The defendant asserts that plaintiff's Section 1983 claim against him in his individual capacity is barred by the doctrine of qualified immunity.

## DISCUSSION

Plaintiff's complaint sets forth a single claim for excessive use of force in the course of an arrest, arising under 42 U.S.C. § 1983, which provides a right of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" when the deprivation is caused by anyone acting under color of law. Under federal law, it is well settled that qualified immunity protects government officials performing discretionary functions from civil suit, and from liability, where their conduct does not violate "clearly established statutory or constitutional rights." Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002), quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). The shield of

qualified immunity has been expanded to include acts that may not involve the exercise of "actual discretion," and can include acts that may be ministerial but are "job-related functions" and are through means that are within the official's authority to utilize. Holloman v. Harland, 370 F.3d 1252, 1265-66, (11th Cir. 2004), quoting Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1185 n. 17 (11th Cir. 1994). Qualified immunity may be applied to sheriff's deputies. Townsend v. Jefferson County, 601 F.3d 1152 (11th Cir. 2010).

The Supreme Court recently re-articulated the standard for a qualified immunity analysis, stating that "qualified immunity balances two important interests, the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Under Pearson, the court must grant qualified immunity unless the plaintiff can demonstrate, first, that the facts viewed in the light most favorable to the plaintiff establish a constitutional violation by the officer, and second, that it was clearly established at the time of the incident that the actions of the defendant were unconstitutional. 129 S. Ct. at 814-15, 817-18.[4] Furthermore, it is the general rule that qualified immunity will protect government actors from liability, and only in "exceptional cases" will the immunity be unavailable as a shield. Harris v. Board of Educ. of Atlanta, 105 F.3d 591, 595 (11th Cir. 1997). Even so, qualified immunity does not apply in those instances where the case law establishes a "bright line"

---

[4] Pearson further holds that the court is no longer required to perform a qualified immunity analysis in the order stated in Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), and instead is "permitted to exercise sound discretion" in whether the first or second prong is looked at first. Pearson, 129 S. Ct. at 818.

in such a "concrete and factually defined context" to make it obvious to all reasonable government actors, in the defendant's place, that the actions violate federal law. Scarbrough v. Myles, 245 F.3d 1299, 1301 (11th Cir. 2001); German v. Sosa, 2010 WL 3965825 (11th Cir. 2010).

The initial burden of demonstrating that the public official is acting within the scope of his position lies with the defendant asserting that defense. Holloman, 370 F.3d at 1264. The test is not whether the defendants had the authority to effectuate an illegal act, but whether their jobs entailed engaging in the act in general. See 370 F.3d at 1266. In other words, the court does not ask whether defendant had the right to use excessive force against the plaintiff, but simply whether making arrests was within the general scope of the officer's duties. The answer, of course, is in the affirmative, and plaintiff does not dispute that the defendant was acting within the scope of his authority at the school.

Once the defendant has met that burden, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. 370 F.3d at 1264. To prevail against an assertion of qualified immunity, the plaintiff must demonstrate that: "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." 370 F.3d at 1264, citing Wilson v. Layne, 526 U.S. 603, 609, 199 S. Ct. 1692, 1697, 143 L. Ed. 2d 818 (1999). In this case, plaintiff's claim can withstand the instant motion for judgment on the pleadings only if it was "clearly established," at the time of the incident on October 23, 2007, that use of the taser under similar circumstances constituted an excessive use of force.

The Fourth Amendment protects citizens from "unreasonable" seizures, which includes prohibiting the use of unreasonable force in effecting a lawful and legitimate seizure. Graham v. Connor, 490 U.S. 386, 394-95, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989); Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002) ("The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest."). The court of appeals has explained its Fourth Amendment excessive force principles as follows:

> The Supreme Court has instructed that "all claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). It is well established that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. at 396, 109 S. Ct. 1865. To determine whether the force used is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests at stake. See id.; Tennessee v. Garner, 471 U.S. 1, 8, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985); Crosby v. Paulk, 187 F.3d 1339, 1351 (11th Cir. 1999). Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," Bell v. Wolfish, 441 U.S. 520, 559, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979), "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396, 109 S. Ct. 1865.
>
> > Therefore, "[u]se of force must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993) (quoting Graham, 490 U.S. at 396, 109 S. Ct. 1865). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make

> split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97, 109 S. Ct. 1865. The reasonableness inquiry is also an objective one. "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397, 109 S. Ct. 1865. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Id. at 397, 109 S. Ct. 1865; see Scott v. United States, 436 U.S. 128, 138, 98 S. Ct. 1717, 56 L. Ed. 2d 168 (1978). Furthermore, this Court has concluded that "Fourth Amendment jurisprudence has staked no bright line for identifying force as excessive," that "[t]he hazy border between permissible and forbidden force is marked by a multifactored, case-by-case balancing test," and "[t]he test requires weighing of all the circumstances." Smith v. Mattox, 127 F.3d 1416, 1419 (11th Cir. 1997).

Jackson v. Sauls, 206 F.3d 1156, 1169-70 (11th Cir. 2000); see also Troupe v. Sarasota County, Fla., 419 F.3d 1160, 1168 (11th Cir. 2005), cert. denied, 547 U.S. 1112, 126 S. Ct. 1914, 164 L. Ed. 2d 664 (2006).

Although the court has recited the evidence in a light most favorable to the non-moving plaintiff, the legal "reasonableness" of the force used must be viewed from the perspective of the officer on the scene. Jackson v. Sauls, 206 F.3d 1156, 1169-70 (11th Cir. 2000); Troupe v. Sarasota County, Fla., 419 F.3d 1160, 1168 (11th Cir. 2005). The test is the "objective reasonableness" of the force used by the officer, regardless of his subjective motive or animus, taking into account the often split-second nature of the decisions officers must make about the use of force. The assessment of "reasonableness" entails careful consideration of a number of factors. For example:

> The Supreme Court has established that, in order to balance the necessity of using some force attendant to an arrest against the arrestee's constitutional rights, a court must evaluate a number of factors, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." [Graham], 109 S. Ct. at 1872.  See also, e.g., Leslie v. Ingram, 786 F.2d 1533, 1536 (11th Cir. 1986) (holding that, in determining if force was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted).  Graham dictates unambiguously that the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight.

Lee v. Ferraro, 284 F.3d 1188, 1197-98 (11th Cir. 2002).

A different situation exists when an arrest is made without probable cause or arguable probable cause.  Where the arrest is made without even arguable probable cause, any degree of force may be unlawful.  Sheth v. Webster, 145 F.3d 1231, 1238 (11th Cir. 1998).  However, so long as an officer has probable cause "to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.  Lee, 284 F.3d at 1194-95, quoting Atwater v. City of Lago Vista, 532 U.S. 318, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001); Virginia v. Moore, 553 U.S. 164, 128 S. Ct. 1598, 170 L. Ed. 2d 559 (2008).[5]  Both the Supreme Court and the Eleventh Circuit Court of Appeals have noted that an officer's right

---

[5] The court is aware that, in Alabama, an officer may arrest a person for a misdemeanor only if he personally witnesses it.  Nonetheless, this rule of state law does not limit the Fourth Amendment jurisprudence used to assess whether excessive force is used.  As the Supreme Court explained in Virginia v. Moore, 553 U.S. 164, 128 S. Ct. 1598, 170 L. Ed. 2d 559 (2008), all the Fourth Amendment requires for an arrest is probable cause, and the rule remains the same even if state law would not allow an arrest under the same circumstances.  Thus, notwithstanding a state-law limitation on the power of arrest, there is no Fourth Amendment constitutional concern as long as probable cause to arrest exists.

12

to effect a lawful arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof." Lee, 284 F.3d at 1200, quoting Graham, 490 U.S. at 396. Qualified immunity will be available to the officer unless the plaintiff can demonstrate that the infringed right was "clearly established" at the time of the violation. A plaintiff can do this in several ways:

> First, he can show that a materially similar case has already been decided, giving notice to the police. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). He could also show that a broader, clearly established principle should control the novel facts in this situation. Hope v. Pelzer, 536 U.S. 730, 741, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). Finally, he could show that this case fits within the exception of conduct which so obviously violates that constitution that prior case law is unnecessary. Ferraro, 284 F.3d at 1199.

Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005). Qualified immunity must be applied to shield an officer so long as, taking the complaint's facts as true, "reasonable people could disagree about whether [the officer] – in the light of the then clearly established law – responded reasonably." Even if the court finds that the force applied in a particular instance is excessive, the qualified immunity still applies unless the law prohibiting that level of force was "clearly established" at the time it was employed.

In this case, we need not definitely answer the question of whether the use of the taser gun in this instance was excessive force. Even if we assume that the use of the taser violated Floyd's constitutional rights, the plaintiff cannot demonstrate that the law was so clearly established in October 2007 that it gave Corder fair warning that using the taser under these circumstances was illegal. The court's analysis, then, begins and ends with an examination of the second prong under the Saucier test.

The law regarding the use of tasers has only recently begun to develop. The court is not willing to say that the use of a taser is so inherently excessive that any reasonable officer should have known its use violated the Fourth Amendment. Rather, the use of taser may be seen as excessive only by reference to factually similar cases decided prior to the incident in question. Thus, the court must look to the factual boundaries of similar cases to determine whether, under these circumstances, a reasonable officer would be on fair warning that the use of a taser was illegal.

The only case cited by plaintiff that specifically involved the use of a taser is both unpublished and issued years *after* the conduct at issue. Powell v. Haddock, 366 Fed. Appx. 29 (11th Cir. 2010). Powell, therefore, cannot constitute "clearly established" law in 2007. Moreover, the only taser case relied upon by the court in Powell was from 2009. Mann v. Taser International, Inc., 588 F.3d 1291, 1306 (11th Cir. 2009)(use of a taser is reasonable force when the plaintiff has refused to comply with an officer's orders, and where the conduct was "violent and extended"). The only pre-2007 case law cited by plaintiff is Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002), which involved the use of pepper spray. The use of pepper spray is not the equivalent of the use of a taser,[6] and, even if it were, the facts in Vinyard are not sufficiently similar to the facts in this case. The plaintiff in Vinyard was already handcuffed and secured when the pepper spray was used, and the court noted that use of pepper spray is excessive force where "the crime is a minor infraction, the

---

[6] While both are generally deemed to be non-lethal weapons, there clearly is some continuim, however ill defined, in which a handgun is most deadly, a beanbag gun less so, a taser gun, next in line, and pepper spray falling even lower on the list. See, *e.g.*, Glenn v. City of Columbus, 375 Fed. Appx. 928, 934 (11th Cir. 2010). Cases involving different weapons do not "meet the standard for obvious clarity" required for establishing that the use of force was clearly established as excessive. 375 Fed. Appx. at 934.

arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else." 311 F.3d at 1348. These cases do not demonstrate that the use of a taser against the plaintiff in this case in 2007 was excessive force.

Plaintiff correctly states that the test of the reasonableness of the use of force depends upon three factors: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the officers or others; and (3) whether the suspect actively resisted arrest or attempted to flee. Graham, 490 U.S. at 396.[7] At the time that Floyd was arrested by Corder, the reasonableness of the use of a taser had been examined only once by the Eleventh Circuit Court of Appeals in 2004 in Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004), a case that plaintiff fails to address in his brief. In Draper, the use of the taser gun was found to be "reasonably proportionate to the difficult, tense and uncertain situation" involved in a traffic stop where the plaintiff was "hostile, belligerent, and uncooperative." In Draper, the crime at issue was an "improperly illuminated" tag light – certainly a minor violation. Furthermore, the plaintiff was unarmed, and there had been no violence and no report of violence. The plaintiff in Draper was not attempting to flee. He got out of the vehicle as ordered by the officer, but then was "belligerent, gestured animatedly, continuously paced, appeared very excited, and spoke loudly." He continually refused to retrieve from the vehicle documents that the officer requested. 369 F.3d at 1272-74. Accordingly, it was "clearly established" in 2004 that a taser could be employed on a noncompliant suspect even where the crime alleged was minor, and

---

[7] See, e.g., Borton v. City of Dothan, ___ F. Supp. 2d ___, 2010 WL 3328361 (M.D. Ala. 2010)(genuine issue of material fact as to whether use of a taser was excessive force where no crime was even alleged against the victim, and she was face-down on a gurney in restraints, incapable of fleeing or engaging in a physical fight with officers, when the taser was applied).

even where no violence had occurred.  The court in Draper further noted that "the single use of the taser gun may well have prevented a physical struggle and serious harm."  360 F.3d at 1278.

For purposes of determining what a reasonable officer in Corder's position in 2007 could have known regarding the reasonableness of using his taser, the court need look no further than Draper.  By comparison, Corder had cause to believe that Floyd had hit the student he was escorting from the classroom.  Willis had told him as much, and he had probable cause (for Fourth Amendment purposes) to arrest Floyd for several misdemeanors (e.g., assault, domestic violence, and disturbing the peace).  When he attempted to investigate what was occurring between Floyd and the student, Floyd actively resisted, refusing to speak or cooperated, and by slapping or pushing Corder's hand away.  As Corder ordered Floyd to stop, Floyd continued to walk away toward the school entrance.  Compared to Draper, there was greater need for the application of force than was present in the traffic stop involved in Draper.  Corder believed the plaintiff had engaged in violence, he resisted investigation and arrest, and he appeared to be headed back into the school, causing concern for the people remaining there.  Draper simply did not clearly establish that the use of a taser under the circumstances faced by Corder was an unconstitutional use of excessive force.

The Eleventh Circuit Court of Appeals did not address the issue of excessive force involving a taser again in a published opinion until 2008.[8]  In Zivojinovic v. Barner, 525 F.3d 1059 (11th Cir.

---

[8] An unpublished opinion issued just 11 days prior to the incident at issue here held that use of a taser was not excessive force when used on an plaintiff who had "head-butted" his father and bitten an officer in the hours before he was shot with a taser in order get him into handcuffs to take him to an initial appearance before a judge.  Burkett v. Alachua County, 250 Fed. Appx. 950 (11th Cir., October 12, 2007).  Another 2007 case involved use of a taser and a claim of excessive force, but was remanded on the basis that the trial court had improperly granted the officer's renewed motion for judgment as a matter of law, and it does not specifically address circumstances under

2008), the court held that use of a taser on a handcuffed suspect was not excessive force because the suspect, whose nose had been broken and was spraying blood, appeared to the officer to be spraying blood on him intentionally. 626 F.3d at 1073. Accordingly, the court held such force is reasonable where a suspect "has repeatedly ignored police instructions and continues to act belligerently" even where the suspect has already been restrained.

The first published case in which the Eleventh Circuit found that use of a taser constituted excessive force was decided in November 2009, twp years after the incidence involving these litigants. In Oliver v. Fiorino, 586 F.3d 898, 903 (11th Cir. 2009), an officer tased a pedestrian who had reported that he was being shot at least eight times within a two-minute period, even after he was "lying on the scorching hot asphalt screaming in pain" and after he "flopped down like a 'wet cloth' because he had no control over his body." The victim of the tasing died, apparently as a result. The court noted that the victim in Oliver was "neither accused nor suspected of a crime, and that the tasing continued after the victim was "lying on the hot pavement, immobilized." 586 F.3d at 901. Of course, cases decided after the events that gave rise to this case are irrelevant to what a reasonable officer was on notice of when Corder deployed his taser on Floyd. They do, however, illustrate the lack of logic employed by plaintiff in this case. It is clear that the courts have not interpreted Draper to mean that use of a taser constitutes excessive force where the crime at issue is minor and the officer merely perceives some threat of violence. Where courts do not recognize that the law is "clearly established," certainly it cannot be expected the defendant will do so.

---

which use of a taser may be considered to be excessive force. Chaney v. City of Orlando, 483 F.3d 1221 (11th Cir. 2007). Burkett is not relevant to the examination here because it was unpublished (although it would support defendant's position), and Chaney is simply not instructive.

In this case, plaintiff has failed to come forward with any evidence that would show that Corder, in his individual capacity, is not entitled to qualified immunity. Plaintiff's brief rests upon his assertion that the "facts" in this case are that the violation charged was a minor misdemeanor, that Floyd was unarmed and "non-threatening," and that he was not attempting to flee. Plaintiff ignores other "facts" alleged in the complaint and the testimony attached thereto. Even though the school office assistant testified that she did not feel Floyd was "out of control," she believed that she had just heard Floyd hit the nephew, and that Floyd was very upset and continually "fussing" at the child. The plaintiff further ignores the officer's testimony (which plaintiff also attached to the complaint) that the assistant told him that she needed assistance because someone was "beating" a child, and that when he approached Floyd and asked for his attention, Floyd was noncompliant. Finally, the plaintiff ignores the officer's testimony that Floyd was "going towards" the child when Corder put up his hand to stop him, and that Floyd "hit [his] hand down." Plaintiff cannot attach testimony to the complaint, and rely on part of it in order to support his claim that the defendant used excessive force, while ignoring the rest of the testimony, which would entitle the defendant to qualified immunity.

The existing law at the time of the incident did not put the officer on notice that deploying his taser three times to subdue the plaintiff was "clearly unlawful given the circumstances." Pace, 283 F.3d at 1282. Accordingly, the motion for judgment on the pleadings is due to be granted.

**CONCLUSION**

Accordingly, consistent with the foregoing discussion of the pleadings and Eleventh Circuit Court of Appeals case law, the defendant's motion for judgment on the pleadings against plaintiff (Doc. 17) is due to be GRANTED, and the complaint is due to be DISMISSED WITH PREJUDICE.

A separate order will be entered in accordance with the findings set forth herein.

DATED this 3rd day of December, 2010.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE